UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Angela Ratkowski<br><br>        Plaintiff,<br><br>  v.<br><br>Experian Information Solutions, Inc.,<br>TransUnion, LLC; Educators Credit Union<br><br>        Defendants. | CASE NO.  2:23-cv-00185<br><br>COMPLAINT FOR DAMAGES:<br><br>1.  Violation of Fair Credit Reporting Act |

COMES NOW Plaintiff Angela Ratowski (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by Defendants Experian and TransUnion regarding it continuing to allow incomplete and inaccurate payment information to remain on Plaintiff's credit report after disputing her accounts with Educators Credit Union.

3. Defendant Educators Credit Union continued to report an incomplete payment history regarding Plaintiff's vehicle payments, despite being aware that Plaintiff always maintained timely monthly payments.

4. Similarly, Educators Credit Union continued to report inaccurate and incomplete information regarding Plaintiff's payments on an unsecured credit card account.

5. Plaintiff's credit reports have been disseminated to third parties.

1

6. Plaintiff's credit has also been damaged as a result of the inaccurate and misleading reporting.

7. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

8. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

10. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

11. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

12. Defendant Experian is a credit reporting agency that compiles information on consumers throughout the United States, including those located in Wisconsin.

13. Defendant TransUnion is a consumer reporting agency that provides consumer information regarding consumers throughout the United States, including those located in Wisconsin.

14. Defendant Educators Credit Union is a credit union located in the State of Wisconsin.

## GENERAL ALLEGATIONS

15. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

16. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

17. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

18. In the alternative Plaintiff alleges that each and every Defendants' actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

**FICO, Inc.**

19. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

20. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

21. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

22. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

23. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

24. There are 28 FICO Scores that are commonly used by lenders.

25. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

26. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

27. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information

3

Case 2:23-cv-00185-SCD     Filed 02/09/23     Page 3 of 15     Document 1

provided by the CRAs is accurate and complies with credit reporting industry standards.

28. There are five key factors that a FICO Score considers: 1) Payment History, 2) Amount of Debt, 3) Length of Credit History 4) New Credit and 5) Credit Mix.
29. Each of the five factors is weighted differently by FICO.
30. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
31. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.
32. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.
33. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.
34. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

### e-OSCAR

35. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.
36. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.
37. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

4

**Metro 2**

38. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

39. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

40. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

41. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

42. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:

    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

43. The CDIA's Metro 2 is accepted by all CRAs.
44. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
45. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
46. The three main credit bureaus helped draft the CRRG.
47. The CRRG is not readily available to the public. It can be purchased online for $229.45.
48. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.
49. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
50. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
51. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.
52. All three major CRAs are members of the CDIA
53. The CDIA is on record that they know, understand, and accept mortgages are generally non-dischargeable under 11 U.S.C. §1328(c)(1) and 11 U.S.C. § 1322(b)(5).

**General Background**

54. Plaintiff filed for Chapter 7 bankruptcy protection in 2022.
55. Plaintiff reaffirmed her vehicle loan and credit card with Educators Credit Union, resulting in the balances not being discharged upon completion of Plaintiff's chapter 7 proceeding.

56. On September 15, 2022 Plaintiff ordered a credit report from the three credit reporting agencies in order to confirm accurate reporting of her accounts after entry of her discharge and approval of her reaffirmation agreement with Educators Credit Union

**Plaintiff's Disputes with the Credit Reporting Agencies**

57. On Plaintiff's September 15, 2022 credit reports she noticed the following inaccuracies:
    a. **Experian:**
        i. Educators Credit Union: Reporting Plaintiff's credit card account as past-due with an inaccurate and incomplete payment history.
    b. **TransUnion:**
        i. Educators Credit Union: Reporting Plaintiff's credit card account as past-due with an inaccurate and incomplete payment history.
        ii. Educators Credit Union: Reporting Plaintiff's auto loan with an inaccurate and incomplete payment history.
58. Plaintiff disputed the above tradelines with Experian, Equifax and TransUnion in November of 2022.
59. Plaintiff included verification of her timely vehicle payments and credit card statements to show the account as open, current, and with no derogatory or past-due payments.
60. Plaintiff also included a copy of the approved reaffirmation agreements.
61. On January 5, 2023 Plaintiff ordered additional credit reports from Experian, Equifax, and TransUnion in order to verify the disputed account was properly updated.
62. On the January 5, 2023 the following inaccuracies remained:
    a. **Experian:**
        i. Educators Credit Union: Continued to report and inaccurate and incomplete payment history.
    b. **TransUnion:**
        i. Educators Credit Union: Continued to report and inaccurate and incomplete payment history for both reaffirmed accounts.

**Inaccuracy – Educators Credit Union**

7

Case 2:23-cv-00185-SCD   Filed 02/09/23   Page 7 of 15   Document 1

63. Plaintiff was frustrated to see that Defendant Educators Credit Union did not properly update the account.
64. Educators Credit Union continued reporting the account with an incomplete and inaccurate payment history.
65. Educator's account history does not reflect the payments made on the account.
66. Educators's reporting makes it appear that Plaintiff is not making timely payments on the loan and that he is delinquent with his payments.
67. There is no information regarding the Educators Credit Union account that would inform potential lenders or anyone else viewing the credit report that all payments were timely made on the account.
68. Educator's reporting is entirely incomplete, misleading and technically inaccurate.
69. The reporting is incomplete because the report lacks any information regarding the payment history.
70. As it stands it appears that Plaintiff is not making payments on the account.
71. Such reporting remains wholly incomplete and would lead lenders to question whether Plaintiff is current with the loan.
72. Such reporting makes Plaintiff appear less credit worthy given that installment payments are one the most important monthly payments a consumer makes for credit worthiness purposes.

       **Willfulness**

73. This was not a negligent act by Defendant Educators Credit Union but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore her credit.
74. Educator's reporting makes Plaintiff appear less credit worthy by not acknowledging that Plaintiff is making timely payments.
75. Educators Credit Union knows that its reporting must be accurate and complete.
76. Once Educators Credit Union received Plaintiff's dispute rather than update the payment history Educators Credit Union continued to report inaccurate information.

77. Educator's reporting is objectively false, misleading, and inaccurate as it knows payments are being made on the account.

78. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

**Damages**

79. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

80. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by the reporting of the account listed above.

81. The inaccurate and incomplete reporting of the accounts has been disclosed and disseminated to various third-party lenders.

82. Until Educator's reporting has been properly updated Plaintiff continues to appear a severe credit risk and will continue to experience denials of credit.

83. The actions of Experian, TransUnion, and Educators Credit Union as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants Experian and TransUnion)

**Experian Information Solutions, Inc. and TransUnion, LLC – Failure to Assure Credit Reporting Accuracy**

84. Plaintiffs realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

85. Experian and TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

86. Had Experian and TransUnion maintained reasonable procedures to assure maximum accuracy Experian and TransUnion would never have allowed the disputed Educators Credit Union account to continue to report as alleged above.

9

Case 2:23-cv-00185-SCD    Filed 02/09/23    Page 9 of 15    Document 1

87. Even assuming Experian and TransUnion are not sophisticated enough to recognize the issues with the tradelines reporting the inaccuracies identified above, Plaintiff disputed the accounts and Experian and TransUnion still did not fix the issue.
88. Plaintiff informed Experian and TransUnion that the Educators Credit Union account was not closed and included in bankruptcy but instead open and current.
89. Plaintiff submitted verification of payments made to Educators Credit Union to support the dispute.
90. However, Experian and TransUnion failed to make any updates to Plaintiff's credit reports and the disputed accounts remain unchanged.
91. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

92. The violations described herein by Experian and TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.
93. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.
94. Such a finding should shock the conscience.
95. When those errors are disputed Experian and TransUnion intentionally send consumer disputes to employees who do not live within the continental United States.
96. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.
97. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendants Experian and TransUnion receive little to no training concerning how to accurately report consumer debt.
98. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v.*

*Experian Info. Sols.*, Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

99. Credit Reporting Agency's (CRA) employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

100. The CRA's have intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

101. Experian and TransUnion continue to allow the disputed tradelines to report in a manner it knows is unlawful.

102. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against All Defendants)

**Experian and TransUnion – Failure to Reinvestigate Disputed Information.**

103. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

104. After Plaintiff disputed the accounts mentioned above, Experian and TransUnion were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC § 1681i-(a)1.

105. Experian and TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

106. Experian and TransUnion could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained why the disputed accounts were inaccurate and the issues were apparent on their face.

107. Plaintiff alleges that Experian and TransUnion both have their own independent duty to conduct a reasonable investigation 15 USC §1681i-(a)1.

108. Experian and TransUnion are not passive entities bound to report whatever information a DF provides.

109. Given the aforementioned, Plaintiff alleges that Experian and TransUnion can and do suppress inaccurate information from being reported when DFs provide inaccurate information.

110. Experian and TransUnion can and do instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

111. Experian and TransUnion failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters which make obvious what issues existed.

112. Experian and TransUnion therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

113. Experian and TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian and TransUnion's general policy is to simply parrot whatever information a data furnisher sends.

114. Such policies and procedures inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

**Educators Credit Union**

115. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

116. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

12

Case 2:23-cv-00185-SCD   Filed 02/09/23   Page 12 of 15   Document 1

117. Defendant Educators Credit Union violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

118. The CRAs provided notice to Educators Credit Union that Plaintiff was disputing the inaccurate and misleading information, but Educators Credit Union failed to conduct a reasonable investigation of the information.

119. The most basic investigation would include a simple review of well-established credit reporting industry standards.

120. Plaintiff alleges Educators Credit Union did not review well established industry standards for credit reporting.

121. If Educators Credit Union had reviewed such Educators Credit Union would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

122. Such an investigation would be unreasonable.

123. The lack of investigation is unreasonable.

124. Plaintiff further alleges that Educators Credit Union not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

## THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Review and Consider All Relevant Information.**

125. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

126. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

127. As a result of Experian and TransUnion's violation(s) of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

128. The violations by Experian and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

129. In the alternative Experian and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

130. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Delete Disputed and Inaccurate Information.**

131. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

132. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

133. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

134. The violations by Experian and TransUnion were willful, rendering Experian and TransUnion individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

135. In the alternative, Experian and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

136. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

Wherefore, Plaintiff pray for judgment as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
5. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Defendants policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: February 9, 2023

Elliot Gale (Bar #1119904)
egale@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Angela Ratkowski